IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOSE PEREZ-CARRERA, ) | Civil Action No. 3:06-2044-TLW-JRM |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| M. PETTIFORD, WARDEN OF ) | |
| FCI-BENNETSVILLE, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondent. ) | |
| ) | |

  Petitioner, Jose Perez-Carrera, filed this 28 U.S.C. § 2241 action on July 17, 2006.[1] He is an inmate at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville"). His allegations concern incidents which occurred while he was an inmate at FCI-Allenwood (Pennsylvania). Respondent is M. Pettiford, the Warden of FCI-Bennettsville. Respondent filed a motion to dismiss, or in the alternative for summary judgment[2] on September 26, 2006. Petitioner, because he is proceeding pro se, was advised on September 28, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Respondent's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his petition. Petitioner filed responses in opposition to Respondent's motion for summary judgment on October 31, 2006 and April 25, 2007.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2] As matters outside the pleadings have been considered, the undersigned has treated this as a motion for summary judgment.

## FACTS

Petitioner is serving an aggregate term of 49 years and 5 months for violations of 18 U.S.C. § 2113 (bank robbery and incidental crimes resulting in death); 18 U.S.C. § 924(c) (use of a firearm in a crime of violence); 18 U.S.C. § 2119 (armed carjacking resulting in death); 18 U.S.C. § 922(v)(possession of a semi-automatic assault weapon); and 18 U.S.C. § 2 (aiding and abetting). Respondent's Ex. 1.[3]

On January 15, 2004, Petitioner received an incident report charging him with violation of Disciplinary Code 111A (attempted introduction of narcotics or related paraphernalia) and 197 (use of the telephone to further criminal activity).[4] Petitioner, through an interpreter, was advised of his rights in connection with the disciplinary process. See Respondent's Ex. 3 (Incident Report).

The charges resulted from an investigation conducted by the Special Investigative Services Office at FCI-Allenwood. The investigation began when staff screened Petitioner's out-going mail. The package sent by Petitioner was a large envelope addressed to Rose Cabrera. Inside the envelope were 58 pages of legal documents stapled together. Two pages were glued together and when staff cut the pages apart, they found a small ziplock-type bag taped between the two pages. The bag contained tobacco. The package also contained an old legal mail envelope that was dated March 7, 2002, and initialed by staff. Investigators began reviewing Petitioner's telephone calls. In the calls to a female, Petitioner referenced the letter and package in question and asked if these items had been received and whether the letter of explanation had been received. An investigator

---

[3] References to exhibits to Respondent's motion for summary judgment will be referred to as "Respondent's Ex. ___."

[4] He was also initially charged with Code 406 (unauthorized use of the mail), however, that charge was dropped during the initial processing of the incident report.

determined there was sufficient evidence to process the report and Petitioner was placed in the Special Housing Unit ("SHU") pending a hearing. See Respondent's Ex. 3.

The Unit Discipline Committee ("UDC") conducted an initial hearing on the charges on March 24, 2004. Petitioner was afforded the opportunity to make a statement and he stated that the report was not true. He did not offer any additional evidence to support his defense. See Respondent's Ex. 3. The UDC determined that the charge should be referred to the Discipline Hearing Officer ("DHO") for disposition. Petitioner was advised and acknowledged his rights before the DHO. Respondent's Ex. 5 (Inmate Rights at Discipline Hearing). He was provided the opportunity to request a staff representative and witnesses, but declined both. Respondent's Ex. 4 (Notice of Hearing before the DHO).

Petitioner appeared at the hearing before the DHO on April 1, 2004. An interpreter was present. Petitioner was allowed to make a statement and he said that he was mailing out his legal work and forgot that the tobacco was in there. He further stated that he hid tobacco inside his legal work in case he was sent to the SHU. Petitioner stated that he always talks to Ms. Cabrera "like that" on the phone and denied he was attempting to demonstrate how to send contraband into the facility. He did not call any witnesses or present any documents to support his defense. Respondent's Ex. 6 (DHO Report).

After deliberation, the DHO ruled that Petitioner had committed the prohibited acts as charged. In his written report, the DHO specified the evidence he relied on to support his findings. The evidence relied on included the statement of the reporting officer, the findings of the investigation, the intelligence officer's statements concerning the telephone calls, and the photographs of the outgoing mail. The DHO explained that he weighed Petitioner's statements

against the other evidence and found that the greater weight of the evidence supported a finding of guilt. In evaluating the facts, the DHO considered Petitioner's prior history of attempted introduction of drugs through the mail,[5] that the package revealed no coherent order to the items and contained pages which were apparently randomly taken from judicial opinions and photocopied cases (see Respondent's Exs. 7 and 8), Petitioner's statements during telephone conversations with Ms Cabrera where he asked if she received the package and letter of explanation and stated "they are charging $7500" (see Respondent's Exs. 6 and 7), and his use of another inmate's telephone PAC number to place the calls to corroborate the belief that Petitioner was demonstrating a method of introduction of narcotics to the facility. See Respondent's Ex. 6.

The DHO imposed sanctions of 60 days in disciplinary segregation, disallowance of 54 days good-conduct time, loss of telephone privileges for 5 years, loss of commissary privileges for 2 years, and loss of visiting privileges for 5 years for violation of Code 11A. He imposed sanctions of 60 days disciplinary segregation, disallowance of 54 days good-conduct time, loss of telephone privileges for 5 years, loss of visiting privileges for 5 years, and a disciplinary transfer for violation of Code 197. The sanctions were to be served consecutively. The DHO explained that the sanctions were imposed in an effort to address the serious threat that drugs and other contraband can pose to the safety of the facility and to encourage Petitioner to refrain from such behavior in the future. Respondent's Ex. 6.

---

[5] Petitioner was sanctioned by the DHO on January 8, 2002 for violating Code 197. In that incident, FCI-Allenwood mail room staff found a magazine addressed to Petitioner that contained marijuana. Petitioner's phone calls were intercepted and it was discovered that he spoke in code about drugs and discussed what he wanted and how he wanted it done. Respondent's Ex. 7 (Memorandum from G. Hills, Intelligence Officer).

4

Petitioner was advised of his right to appeal the proceedings under the Administrative Remedy Procedure. He was provided with a copy of the DHO's written report on April 7, 2004. Respondent's Ex. 6.

## DISCUSSION

Petitioner challenges the above disciplinary actions taken against him while he was an inmate at FCI-Allenwood. He seeks to have his good-conduct time, visitation privileges, and telephone privileges restored. Petitioner alleges that these actions violated his due process rights. Respondent contends that the motion for summary judgment should be granted because the disciplinary action taken at FCI-Allenwood was appropriate; Petitioner received all process due; the evidence was sufficient to support the conclusion of the DHO; and Petitioner's access to the administrative remedy process was not impeded by the Bureau of Prisons, as Petitioner was allowed to exhaust his grievances.

1. Administrative Remedies

Petitioner claims that his administrative appeal was denied as untimely. He writes that one of the "issues presented" in his petition was "Whether agency's denial of access to administrative remedy on grounds of procedural bar as un-timely[,] where un-timeliness [was] due to agency's own actions[,] constitutes exhaustion of administrative remedies for purposes of habeas corpus relief." Petition at 1. Respondent provides and the record shows, however, that Petitioner has now exhausted his administrative remedies. See Respondent's Ex. 2.

2. Due Process

Petitioner alleges that his due process rights were violated as to his disciplinary convictions. Respondent contends that Petitioner's constitutional rights were not violated because

5

Petitioner received all process due under the standards established in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) and <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445 (1985).

A prisoner is entitled to only a minimal standard of due process in the prison disciplinary setting. The following requirements are sufficient to satisfy this minimal standard of due process:

1. Advance written notice of the charges;

2. A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and

3. The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

<u>Wolff v. McDonnell</u>, 418 U.S. at 563-576.

Petitioner contends that his constitutional rights were violated because there was insufficient evidence to support his conviction. Specifically, he claims that he should not have been convicted on the charges because it was only tobacco, not narcotics, that he sent out; the items were mistakenly sent out; and his telephone calls, which were interpreted by a Spanish speaker who was not Puerto Rican, were misunderstood. Respondent argues that due process is satisfied because there is at least "some evidence" to show that Petitioner committed the offense.

Due process in prison discipline decisions is satisfied if there is "some" evidence to show that the inmate committed the offense. <u>Hill</u>, 472 U.S. at 455. The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the board's decision. <u>Id.</u> at 455-56. This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. <u>Id.</u>; <u>see</u> <u>also</u> <u>Baker v. Lyles</u>, 904 F.2d 925, 932 (4th Cir. 1990).

Petitioner has not shown that his due process rights were violated.  He received advanced written notice of the charges.  <u>See</u> Respondent's Exs. 3, 4, and 6.  He was informed of his right to call witnesses, but declined to do so.  Respondent's Ex. 4.  At the hearing, Petitioner testified and he was given the opportunity to present documentary evidence.  <u>See</u> Respondent's Ex. 6.  Petitioner was given a written statement by the DHO which cited the evidence on which the DHO relied and the reasons for the conviction and disciplinary actions taken.  <u>Id.</u>  Petitioner's disciplinary conviction is supported by "some evidence."  The DHO's decision is supported by "some evidence" to show that Petitioner committed the offenses, including the written report of the investigating officer, the photographs of the package, the content of Petitioner's telephone calls, Petitioner's use of another inmate's telephone PAC number to make the calls, and Petitioner's history of attempting to receive drugs in prison.

## CONCLUSION

Based on review of the record, it is recommended that Respondent's motion for summary judgment (Doc. 7) be granted and that the petition be dismissed.

Respectfully submitted,

s/Joseph R. McCrorey

June 29, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).